IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY SERRA<br>6914 Shelly Dr.<br>Madison, OH 44057 | ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| NORTH PERRY VILLAGE<br>4999 Lockwood Rd<br>Perry, OH 44081 | ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| | ) | |
| -and- | ) ) | |
| | ) | |
| RONALD WALTERS<br>4999 Lockwood Rd<br>Perry, OH 44081 | ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Randy Serra, by and through undersigned counsel, as his Complaint against

Defendant(S), states and avers the following:

## **PARTIES**

1.     Serra is a resident of the city of Madison, county of Lake, state of Ohio.

2.     North Perry Village is a domestic an incorporated municipality within the State of Ohio that

operates a place of business located at 4999 Lockwood Rd, Perry, OH 44081.

3.     North Perry Village was at all times hereinafter mentioned an employer within the meaning of

Ohio R.C. § 4112.01 *et seq*; and 42 U.S.C. 2000e-2 *et seq*.

4.     Ronald Walters was at all times hereinafter mentioned, a "person" within the meaning of Ohio

R.C. § 4112.01(A)(3).

## JURISDICTION & VENUE

5.      North Perry Village hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over North Perry Village comports with due process.

6.      This cause of action arose from or relates to the contracts of North Perry Village with Ohio residents, thereby conferring specific jurisdiction over North Perry Village.

7.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch as the matters in controversy are brought pursuant to Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Serra's state law claims because those claims derive from a common nucleus of operative facts.

9.      Venue is proper in this District because the wrongs herein alleged occurred in this District.

10.     Within 300 days of the conduct alleged below, Serra filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), against North Perry Village operating at 4999 Lockwood Rd, Perry, OH 44081.

11.     The EEOC issued and mailed a Notice of Right to Sue letter to Serra regarding the Charges of Discrimination brought by Serra against North Perry Village.

12.     Serra received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

13.     Serra has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14.     Serra has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

15. Serra is a former employee of North Perry Village.

16. At the time of his termination, Serra was 67 years of age.

17. Serra was employed by North Perry Village as a Patrolman in the Police Department beginning on December 22, 2007.

18. Serra remained employed by North Perry Village in that position until his termination on April 22, 2024.

19. At the time of the events described herein, Serra was 67 years old.

20. Serra is, and at all relevant times was, a member of the class protected by Ohio and federal age-discrimination laws.

21. Serra had a long history of law-enforcement experience before and during his employment with North Perry Village.

22. Serra had been part of a police force for more than 40 years without any major disciplinary incidents.

23. During his employment with North Perry Village, Serra was a good employee.

24. Serra worked for North Perry Village for more than 14 years without problems.

25. On or about April 22, 2022, Ronald Walters became the Police Chief.

26. After Walters became Police Chief, he became Serra's supervisor.

27. From the time Walters became Serra's supervisor, Walters began harassing Serra because of Serra's age.

28. Walters hired individuals who were substantially younger than Serra.

29. Walters publicly referred to Serra as "the old man."

30. Walters repeatedly singled Serra out because of his age.

31. Walters constantly reprimanded Serra concerning the way Serra performed his job.

32. Walters engaged in this conduct despite Serra's decades of law-enforcement experience and established work history.

33. Walters micromanaged Serra in a manner that was not applied to younger members of the Police Department.

34. Younger officers were not constantly reprimanded by Walters in the same way Serra was.

35. Younger officers were not subjected to the same level of scrutiny and micromanagement imposed on Serra.

36. On or about March 2024, Walters took away Serra's compensation time as a disciplinary measure.

37. At that time, Serra had accumulated more than 150 hours of compensation time.

38. Serra objected to the loss of his compensation time.

39. Serra objected to Walters that other members of the police force were not being subjected to the same disciplinary sanctions.

40. In response, Walters told Serra that he was the chief and that whatever he said had to be done.

41. Walters did not offer Serra equal treatment with younger officers.

42. Walters instead enforced discipline against Serra more harshly than against younger members of the department.

43. On or about April 22, 2024, Walters terminated Serra's employment.

44. Serra's termination ended his employment with North Perry Village after more than sixteen years of service.

45. Serra was replaced by a person approximately 30 years younger than he was.

46. Serra's treatment under Walters was materially different from the treatment afforded to substantially younger employees.

47. Serra was subjected to age-based comments, disparate discipline, harsher scrutiny, and termination.

48. The conduct directed at Serra was unwelcome.

49. The conduct directed at Serra occurred during the course of his employment and in the workplace.

50. The conduct directed at Serra intensified after Walters became Police Chief.

51. Serra's age was known to Defendants.

52. Defendants were aware that Serra was significantly older than the younger officers who were treated more favorably.

53. Defendants nevertheless continued to subject Serra to age-based comments and disparate treatment.

54. As a direct and proximate result of North Perrys' conduct, Serra has suffered lost wages, lost benefits, loss of employment, and other compensatory damages.

55. As a further direct and proximate result of North Perrys' conduct, Serra has suffered humiliation, embarrassment, emotional distress, and damage to his professional reputation.

56. North Perrys' conduct was intentional, willful, and undertaken with knowledge of Serra's protected age status.

57. North Perrys' conduct was part of a pattern of treating Serra less favorably than substantially younger employees.

58. North Perrys' conduct culminated in the termination of Serra's employment and his replacement by a substantially younger individual.

59.     North Perrys' did not proffer a legitimate non-discriminatory reason for terminating Serra.

60.     Upon information and belief, Serra's termination of employment, North Perrys hired or retained an individual outside of Serra's protected class to replace Serra.

61.     As a result of North Perry's conduct, Serra suffered, and will continue to suffer damages.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE ADEA (AGAINST NORTH PERRY)

62.     Serra incorporates by reference the preceding paragraphs of the Complaint as if fully rewritten herein.

63.     At all times relevant, Serra was at least 40 years old.

64.     At the time of his termination, Serra was 67 years old.

65.     Serra was therefore a member of the class protected by the ADEA.

66.     After Ronald Walters became Police Chief, Serra was subjected to age-based harssment.

67.     Walters publicly referred to Serra as "the old man."

68.     Walters singled Serra out for criticism.

69.     Walters constantly reprimanded Serra concerning the manner in which Serra performed his job.

70.     Walters micromanaged Serra in a manner that was not applied to substantially younger employees.

71.     Younger members of the Police Department were not subjected to the same scrutiny.

72.     Younger members of the Police Department were not subjected to the same repeated reprimands.

73.     On or about March 2024, Walters took away Serra's compensation time as a disciplinary measure.

6

74.    Serra objected to Walters that other members of the police force were not being subjected to the same disciplinary sanctions.

75.    Defendants treated younger employees more favorably than Serra with respect to discipline, supervision, and the terms and conditions of employment.

76.    On or about April 22, 2024, Defendants terminated Serra's employment.

77.    Serra thereby suffered an adverse employment action.

78.    Serra was replaced by a person approximately thirty years younger than he was.

79.    Serra's age was a determinative factor in Defendants' decision to discipline him more harshly, subject him to age-based comments, and terminate his employment.

80.    But for Serra's age, Defendants would not have treated Serra as they did.

81.    Defendants' conduct violated the ADEA.

82.    As a direct and proximate result of Defendants' unlawful conduct, Serra has suffered lost wages, lost benefits, loss of future earnings, and other economic damages.

83.    As a further direct and proximate result of Defendants' unlawful conduct, Serra has suffered humiliation, embarrassment, emotional distress, and damage to his professional reputation.

84.    Defendants' violations of the ADEA were willful.

85.    Defendants acted with reckless disregard for whether their conduct violated Serra's federally protected rights.

86.    As a direct and proximate result of Defendants' willful age discrimination, Serra is entitled to all legal and equitable relief available under the ADEA, including back pay, front pay or reinstatement, liquidated damages, prejudgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT II: <u>AGE DISCRIMINATION IN VIOLATION OF OHIO R.C. § 4112.01 ET SEQ. (AGAINST NORTH PERRY)</u>**

87. Serra restates each and every prior paragraph of this complaint, as if it were fully restated herein.

88. At all times relevant herein, Serra was 67.

89. At all times relevant, Serra was a member of a statutorily-protected class under Ohio R.C. §4112.14(B).

90. Defendants treated Serra differently from other similarly situated employees based on his age.

91. As of April 22, 2024, Serra was fully qualified for his position and employment with the Defendants.

92. Serra, at age 67, was a member of a statutorily-protected class under Ohio R.C. § 4112.14(B) at the time he was terminated from her employment with the Defendants.

93. Serra was terminated from his employment on or around April 22, 2024.

94. After terminating Serra, the Defendants replaced Serra  with a person who was significantly younger and/or not belonging to the protected class under Ohio R.C. §4112.14(B).

95. The Defendants violated Ohio R.C. §4112.02 and Ohio R.C. 4112.99 by discriminating against Serra based on his age.

96. Serra suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to Ohio R.C. § 4112.01 et seq.

97. As a direct and proximate result of the Defendants' conduct, Serra suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT III: <u>UNLAWFUL AIDING AND ABETTING IN VIOLATION OF R.C. § 4112.01 ET SEQ. (AGAINST RONALD WALTERS)</u>**

98. Serra incorporates by reference the preceding paragraphs of the Complaint as if fully rewritten herein.

8

99.     R.C. 4112 further prohibits any person from aiding, abetting, inciting, compelling, or coercing the doing of any act declared by that chapter to be an unlawful discriminatory practice.

100.    At all times relevant, Walters acted individually and in the course and scope of his authority with North Perry Village.

101.    Walters had supervisory authority over Serra.

102.    Walters had the ability to influence, direct, recommend, and effect disciplinary action against Serra.

103.    Walters had the ability to influence, direct, recommend, and effect the termination of Serra's employment.

104.    Walters personally participated in the discriminatory conduct directed at Serra.

105.    Walters publicly referred to Serra as "the old man."

106.    Walters singled Serra out for criticism because of Serra's age.

107.    Walters repeatedly reprimanded Serra concerning the manner in which Serra performed his job.

108.    Walters micromanaged Serra more harshly than younger employees.

109.    Walters treated younger employees more favorably than Serra.

110.    Walters imposed discipline on Serra that was not imposed on similarly situated younger employees.

111.    When Serra complained that other officers were not being subjected to the same disciplinary sanctions, Walters responded that he was the chief and that whatever he said had to be done.

112.    Walters used his supervisory authority to carry out and further the discriminatory treatment of Serra.

113.    Walters encouraged, authorized, directed, and participated in discriminatory actions against Serra because of Serra's age.

114.    Walters aided and abetted North Perry Village's unlawful age discrimination against Serra.

115.    Walters incited, compelled, and coerced adverse action against Serra because of Serra's age.

116.    Walters directly participated in the decision-making process that resulted in harsher discipline being imposed on Serra.

117.    Walters directly participated in the decision-making process that resulted in Serra's termination.

118.    On or about April 22, 2024, Walters terminated, or substantially caused the termination of, Serra's employment.

119.    Walters's actions were a substantial factor in causing the unlawful discrimination suffered by Serra.

120.    Walters's actions were a direct and proximate cause of Serra's damages.

121.    As a direct and proximate result of Walters's unlawful aiding and abetting, Serra has suffered lost wages, lost benefits, loss of future earnings, and other economic damages.

122.    As a further direct and proximate result of Walters's unlawful conduct, Serra has suffered humiliation, embarrassment, emotional distress, and damage to his professional reputation.

123.    Walters acted knowingly, intentionally, and with conscious disregard for Serra's rights under R.C. Chapter 4112.

124.    As a direct and proximate result of Walters's unlawful aiding and abetting in violation of R.C. 4112, Serra is entitled to recover all relief available under Ohio law, including compensatory damages, back pay, front pay or reinstatement where appropriate, attorneys' fees, costs, interest, and such other legal and equitable relief as the Court deems just and proper.

10

## DEMAND FOR RELIEF

WHEREFORE, Randy Serra demands from Defendants the following:

(a)     Issue an order requiring North Perry Village to restore Serra to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b)     An award against each Defendant of compensatory and monetary damages to compensate Serra for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c)     An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d)     An award of reasonable attorneys' fees and non-taxable costs for Serra's claims as allowable under law;

(e)     An award of the taxable costs of this action; and

(f)     An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Samuel B. Robb, Esq.*

Samuel Robb (0099035)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive
Suite 200
Independence, OH 44131
Phone: (216) 364-1329
Fax:     (216) 291-5744
Email: sam.robb@spitzlawfirm.com

*Attorney For Plaintiff*
*Randy Serra*

11

## JURY DEMAND

Plaintiff Randy Serra demands a trial by jury by the maximum number of jurors permitted.

/s/ *Samuel B. Robb, Esq.*

Samuel Robb (0099035)
**SPITZ, THE EMPLOYEE'S LAW FIRM**